Matthias, J.
 

 The specific question presented in this case is whether the machinery and equipment of two process steam-boiler plants, two water-treating plants and the main water-pumping station of the appellant should be classified for the purpose of taxation as personal or as real property. The Board of Tax Appeals classified them all as real property.
 

 The Standard Oil Company operates two refineries
 
 *525
 
 in the city of Cleveland. At each of these refineries is maintained a steam-boiler house which produces the steam used in the process of refining oil. The boilers are housed in brick buildings which concededly are real property.
 

 It is conceded by the appellant that the ordinary factory boiler plant used for the production of power may be properly classified as realty, but it contends that the boiler machinery and equipment at the Standard Oil refineries, as distinguished from the boiler buildings proper, should be classified as personal property for the reason that they are especially designed for refinery purposes and are used primarily for the production of process steam required as an ingredient in the distillation process and cannot be converted into power plants to run machinery or be economically utilized by any other industry. In short, the basis of the appellant’s contention in this regard is that “this is a process steam plant adapted solely to the necessities of this oil refinery.”
 

 The boilers are designed to operate at low steam pressure and do not contain the superheating equipment found in the usual steam boilers which are designed for power purposes.
 

 The steam produced by these boilers is used to operate numerous pumps located throughout the refinery, but its principal use is to heat and vaporize the oils being refined.
 

 The record discloses that the low pressure steam produced is used primarily in the process of refining, and that these boilers could not be used economically except in a refinery or similar industry. It is shown that boilers producing steam essential'for power purposes are designed to operate at much higher pressure. These boilers are of the horizontal tube type and are supported by structures resting upon foundations. The boiler
 
 *526
 
 houses contain, in addition to the boilers, certain stoking equipment, feed water pumps, gauges and other equipment.
 

 Each of the company’s plants also contains a water-treating plant housed in a building separate from the boiler house. These water-treating plants contain numerous tanks and the necessary pipes, meters and connections to permit continuous operation. The water after treatment is used to produce steam and for no other purpose. The water-treating plants are fed with water taken from the Cuyahoga river through a concrete intake well, and is conveyed through the main water-pumping station. This pumping station consists of five pumps, together with the necessary steam and water-flow meters and starting equipment for the pump motors, all housed in a single building. It supplies all water used in the boilers, but does not supply the water used for general purposes in the refinery building, that being obtained from the city of Cleveland.
 

 The conclusion seems inescapable that use in the process. of refining is the primary and paramount purpose of these pumps and that they, together with the boilers and water-treating plants, constitute essential parts of the processing equipment and machinery used in the refining operation.
 

 It is to be observed that the Board of Tax Appeals was “inclined to the view” that the property above described “under the facts in this case * * * should be classed as personalty.” However, the board announced a finding “that such equipment is realty,” stating as a reason for such finding, “the broad language used by the Supreme Court,” in
 
 Case Manufacturing Co.
 
 v.
 
 Garven,
 
 45 Ohio St., 289, 13 N. E., 493. A portion of the-opinion of the court in that case which is particularly applicable here is as follows:
 

 “The machinery furnishing the motive power is
 
 *527
 
 generally more closely annexed to the freehold, and of a more permanent nature, as the power furnished by it may be adapted to the propulsion of the machinery of a variety of mills without any substantial change in' the motive power itself or in the building other than ■by substituting one kind of machinery for another; whilst the machinery that is propelled, has more of the general character of personalty, is not as a rule so closely annexed to the freehold, and may be removed, and frequently is, from one mill to another, as any other article of personalty; and is more properly ‘accessory to the business’ carried on upon the realty than to the realty itself.”
 

 The foregoing description of the property involved in this controversy, and particularly the purpose for which such property was designed and for which it is in fact used, as well as the manner of its use, shows it “is more properly ‘accessory to the business’ carried on upon the realty than to the realty itself. ’ ’
 

 The case of
 
 Teaff
 
 v.
 
 Hewitt,
 
 1 Ohio St., 511, 59 Am. Dec., 634, is recognized as the leading case in this country on the law of fixtures. It has been followed in innumerable decisions and in all jurisdictions. The legal principle therein stated has become an established rule of property in Ohio. That principle is stated'as follows:
 

 “ * * * the united application of the following requisites will be found the safest criterion of a fixture.
 

 “1st. Actual annexation to the realty, or something appurtenant thereto.
 

 “2d. Appropriation to the use or purpose of that part of the realty with which it is connected.
 

 “3d. The intention of the party making the annexation, to make the article a permanent accession to the freehold — this intention being inferred from
 
 the.nature
 
 of the article affixed, the
 
 relation
 
 and
 
 situation
 
 of
 
 the
 
 
 *528
 

 party
 
 making the annexation, the structure and mode of annexation, and the purpose or use for which the annexation has been made. ’ ’
 

 It is to be observed that the test is to be made by the
 
 united
 
 application of the specified requisites. That test should be applied in this case. The facts disclosed by the record are convincing that all of the machinery and equipment involved in this controversy are firmly affixed to the land or to foundations constructed thereon, for they could not otherwise be operated.
 

 As hereinbefore pointed out, however, no appropriation to the use or purpose of that part of the realty to which the machinery is connected, is disclosed by the record; on the contrary, it is disclosed that such machinery and equipment are accessory to the business conducted on the premises.
 

 The record further shows the intention of the company to have been to retain such property as personal property, such intention being clearly evidenced by the special design of the boiler houses in question and the purpose and use for which the annexation was made and to which all such machinery and equipment are devoted.
 

 The decision of the Board of Tax Appeals in the respect presented by the appeal herein is therefore-reversed.
 

 Decision reversed in part.
 

 Bell, Turnee and Hart, JJ., concur.
 

 Weygandt, C. J., Zimmerman and Williams, JJ., dissent.