In re ROCKY POINT PLAZA CORPORATION.

[Cite as *In re Rocky Point Plaza Corp.* (1993), 86 Ohio App.3d 486.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–293.

Decided Feb. 23, 1993.

*Grieser, Schafer, Blumenstiel & Slane Co., L.P.A.,* and *Daniel M. Slane,* for appellant Rocky Point Plaza Corp.

*Porter, Wright, Morris & Arthur, D. Michael Miller* and *Christopher C. Russell,* for appellee city of Gahanna Board of Zoning Appeals.

WHITESIDE, Judge.

This is an appeal by Rocky Point Plaza Corporation ("Rocky Point") from a judgment of the Franklin County Court of Common Pleas affirming a decision of the city of Gahanna, Board of Zoning and Building Appeals ("board") denying Rocky Point's application for a conditional use permit to build an automobile service facility and tire store on property conditionally zoned for such use. The appeal to the common pleas court was pursuant to R.C. Chapter 2506. Appellant Rocky Point raises a single assignment of error as follows:

"The Court of Common Pleas erred in affirming that the record reflects that there was substantial, reliable and probative evidence before Appellee that Appellant's use of its property would have undesirable effects on the surrounding area when the decision of the Gahanna Board of Building and Zoning Appeals was premised on allegations and speculation of noise and oil pollution, such a decision of the Board not being sustainable as a matter of law."

Rocky Point filed an application with the Gahanna Planning Commission ("commission") requesting a conditional use permit to build a Goodyear retail auto service and tire center on the northeast corner of Hamilton and Johnstown Roads on property currently zoned as "Community Commercial District," the uses for which were defined in Section 1153.03 of the Gahanna City Code, which reads in pertinent part as follows:

"(a) *Permitted Uses.* Only the uses included under the following listed numbers or as otherwise specified in this district shall be permitted in the Community Commercial District.

"(1) *Retail stores.* Retail stores primarily engaged in the selling of merchandise for personal or household consumption and rendering services incidental to the sale of the goods, including the buying or processing of goods for resale.

"General Merchandise: * * *

"Food: * * *

"Apparel: * * *

"Home Furnishing: * * *

"Miscellaneous Retail: * * *

"(2) *Administrative.* Business and professional offices. * * *

"Finance: * * *

"Insurance: * * *

"Real Estate: * * *

"Professional: * * *

"(3) *Personal and consumer services.* Personal services generally involving the care of the persons or his personal effects [*sic*].

"Consumer services generally involving the care and maintenance of tangible property or the provision of intangible services for personal consumption.

"Personal: * * *

"Business: * * *

"(b) *Conditional Uses.* The following uses shall be allowed in the Community Commercial District, subject to the approval in accordance with Chapter 1169.

"(1) *Drive-in facility or open display.* * * *

"(2) *Residential.* * * *

"(3) *Consumer services.* Consumer services generally involving the care and maintenance of tangible property or the provision of intangible service for personal consumption.

"Services:

"726 Funeral service and crematories.

"Recreation:

"7831 Motion picture theaters.

"7911 Dance halls, studios, and schools.

"792 Theatrical producers (except motion pictures), bands, orchestras, and entertainers (theater).

"793 Bowling alleys and billiard and pool establishments.

"794 Amusement arcade or family amusement center (five or more mechanical or electronic amusement devices).

"Automotive and other sales:

"551 Motor vehicular dealers (new and used cars).

"552 Motor vehicular dealers (used cars only).

"553 Tire, battery, and accessory dealers.

"554 Gasoline service stations.

"5591 Boat dealers.

"5592 Household trailer dealers.

"5599 Aircraft and automotive dealers, not elsewhere classified.

"751 Automotive rentals, without drivers.

"752 Automotive parking.

"753   Automotive repair shops.

"754   Automobile services, except repair.

"(c) *Development Standards.*   In addition to the provisions of Chapter 1167, General Development Standards, Additional Use, Height and Area Regulations, the following standards for arrangement and development of land and buildings are required in the Community Commercial District.

"(1) *Intensity of use.*   No minimum lot size is required; however, lot size shall be adequate to provide the yard space required by these Development Standards and the following provisions.

"(2) *Lot width.*   No minimum lot width is required; however, all lots shall abut a street and have adequate width to provide the yard space required by these Development Standards.

"(3) *Side yard.*   A side yard shall be required adjacent to a residential zoning district. These required side yards shall be not less than one-fourth of the sum of the height and depth of the building, but in no case shall be less than fifteen feet and such yard shall be landscaped. Parking spaces, drives or service areas shall be in addition to such yard requirements.

"(4) *Rear yard.*   A rear yard shall be required adjacent to a residential zoning district. These required rear yards shall be not less than one-fourth of the sum of the height and width of the building, except when adjacent to a dedicated alley having not less than twenty feet of right of way.

"A use to be serviced from the rear shall have a service court, alleyway or combination thereof not less than forty feet wide, and shall be enclosed by a solid wall or fence except when adjacent to a dedicated alley. If a structure or series of structures contains more than one facility, the service court, alleyway or combination thereof shall be not less than sixty feet wide.

"(5) *Height.*   All buildings and structures shall conform to Federal Aviation Administration and Port Columbus Airport Zoning Regulations height limitation, whichever may be greater.

"(6) *Parking.*   Parking standards and requirements, as specified in Chapter 1163, shall be met for all uses in this district."

The commission conducted a public hearing upon the application for a conditional use permit. However, no evidence was adduced at the hearing, but only statements by various persons including representatives of various homeowner associations of areas some unspecified distance from the property for which the proposed conditional use was requested. One of the members of the commission indicated that he had had conversations with various persons concerning the requested conditional use permit and related the results of some of those

conversations, which were not presented by way of evidence. Apparently, the planning staff had recommended certain conditions be imposed if the conditional use permit were granted. A motion to approve the application subject to the six modifications outlined in the staff report was unanimously defeated. No further action was taken by the planning commission either to approve or disapprove the application. Nevertheless, an appeal ensued to the Gahanna Board of Zoning Appeals.

The board also conducted a public hearing upon the conditional use permit and again no sworn testimony was taken from witnesses, but only statements by representatives of Rocky Point, the Gahanna zoning staff, and representatives of various housing associations as to the attitude of members of such associations. Questions were asked by various members of the board of the persons speaking at the public hearing, none of whom were sworn and as to whom no opportunity for cross-examination was afforded, rather, the minutes reflecting that:

"Chairman then stated the public hearing rules: The proponents are allowed 20 minutes to speak, the opponents, 30 minutes, then an additional 10 minutes for rebuttal."

A motion was made to "uphold the planning commission" in its denial of the conditional use permit. This motion was passed by a three-to-two vote of the board.

This case epitomizes one of the common problems with administrative hearings conducted by local governmental agencies, especially in the zoning area and especially planning commissions and boards of zoning appeals. There seems to be a blurring of applications for rezoning, applications for variances, and applications for conditional use permits, each of which requires a separate and distinct procedure and approach. Applications for rezoning are legislative in nature and are subject to a public hearing before a planning commission in most communities, with a recommendation of approval or disapproval based upon governmental, political and policy considerations. On the other hand, both applications for variances and applications for permits, such as conditional use permits, require adjudication hearings, not legislative hearings.

In other words, there is no public hearing upon an application for a variance or an application for a conditional use permit but, instead, an adjudication hearing, which is open to the public. A public hearing is one where members of the general public may speak and express their views on the question of governmental, political and policy considerations as to whether certain legislation should be adopted. Adjudication hearings, however, are not subject to such public comment but, instead, involve the determination of rights of specific persons and whether such rights should be granted based upon evidence (not

public opinion) presented at the hearing. Therefore, different procedures are necessary and different rules apply. Only variances and conditional use permits (and some other permits) come before a board of zoning appeals in the ordinary situation.

In *Arcaro Bros. Builders, Inc. v. N. College Hill Zoning Bd. of Appeals* (1966), 7 Ohio St.2d 32, 36 O.O.2d 18, 218 N.E.2d 179, the *per curiam* opinion states as follows:

"Section 2319.01, Revised Code, provides:

" 'The testimony of witnesses may be taken:

" '(A) By affidavit;

" '(B) By deposition;

" '(C) By oral examination.'

"Section 2319.02, Revised Code, provides:

" 'An affidavit is a written declaration under oath, made without notice to the adverse party. A deposition is a written declaration under oath, made upon notice to the adverse party. *Oral testimony* is that delivered from the lips of the witness.' (Emphasis supplied.)

"Section 2317.30, Revised Code, provides:

" 'Before testifying, a witness shall be sworn to testify the truth, the whole truth, and nothing but the truth.'

"Thus, the record in this appeal contains no evidence.

"Hence, the decision of the board was not supported 'by the preponderance of substantial, reliable and probative evidence on the whole record.' Section 2506.04, Revised Code."

Generally in keeping with the teaching of *Arcaro* is *Capello v. Mayfield Hts.* (1971), 27 Ohio St.2d 1, 56 O.O.2d 1, 271 N.E.2d 831, and *Doelker v. Accountancy Bd.* (1967), 12 Ohio St.2d 76, 41 O.O.2d 328, 232 N.E.2d 407. In *Stores Realty Co. v. Cleveland* (1975), 41 Ohio St.2d 41, 70 O.O.2d 123, 322 N.E.2d 629, the Supreme Court distinguished *Arcaro*, stating in the syllabus that "[t]he omission of administration of the oath to a witness in a trial or administrative hearing is waivable error." That case, however, dealt only with the issue of competency of the evidence and was followed in *Dudukovich v. Lorain Metro. Housing Auth.* (1979), 58 Ohio St.2d 202, 12 O.O.3d 198, 389 N.E.2d 1113. However, in that case, the court also noted that upon an R.C. Chapter 2506 appeal:

" * * * [T]he Court of Common Pleas must weigh the evidence in the record, and whatever additional evidence may be admitted pursuant to R.C. 2506.03, to determine whether there exists a preponderance of reliable, probative and

substantial evidence to support the agency decision. * * * [T]his does not mean that the court may blatantly substitute its judgment for that of the agency * * *." *Id.* at 207, 12 O.O.3d at 202, 389 N.E.2d at 1117.

Accordingly, in the limited weighing of the evidence to be undertaken by the common pleas court, consideration must be given to the nature of the evidence, including the question of whether it was given under oath and was subject to cross-examination. R.C. 2506.03 expressly provided that if the "testimony adduced was not given under oath," the appellant upon application should be permitted to present additional evidence in the common pleas court upon appeal. Appellant did not seek this remedy so as to present proper evidence under oath and to be afforded the opportunity to cross-examine witnesses. Here, it is unclear whether Rocky Point was not permitted to cross-examine witnesses under the board's policy or whether it did not seek to do so. However, there was no opportunity afforded to appellant Rocky Point to cross-examine the "witnesses" appearing at the "public hearing" conducted by the board. Had the hearing before the board been properly conducted, the task of judicial review pursuant to R.C. Chapter 2506 would be much easier and much more efficient.

Section 1169.03 of the Gahanna City Code governs the conduct of the planning commission with respect to a public hearing and provides that "[t]he Planning Commission shall hold a public hearing and act on a conditional use in one of the following ways * * *." Then follow three provisions: one for "Approval," one for "Approval with Modification," and one for "Disapproval." The provisions for approval and disapproval are identical, setting forth four conditions of approval requiring an affirmative finding with respect to conditions one, two and four, and a negative finding with respect to condition three, and disapproval requiring a contrary finding with respect to any one of the four conditions, which are set forth in Section 1169.03(a) as follows:

"(a) *Approval.* The Planning Commission shall approve an application for a conditional use if the following four conditions are met:

"(1) The proposed use is a conditional use of the zoning district and the applicable development standards established in this Zoning Ordinance are met.

"(2) The proposed development is in accord with appropriate plans for the area.

"(3) The proposed development will not have undesirable effects on the surrounding area.

"(4) The proposed development will be in keeping with the existing land use character and physical development potential of the area."

Unfortunately, as indicated above, the commission made no affirmative finding as to the existence or nonexistence of any of the four conditions but, instead,

defeated a motion for approval of a conditional use permit subject to modifications outlined in comments from the staff. Individual members of the commission did make some comments, one of them stating, "As was stated earlier I believe by Mr. McPheron a number of us moved into this area because we didn't want to live in the northwest quadrant. I fear that, again at these early stages of development, we have the opportunity to see to it that the same thing that has happened in the northwest quadrant does not happen here. * * * " One of the commission members expressed sensitivity to resident opposition and opined that there were many commercial uses to which the property could be put without obtaining a conditional use permit. Another member also expressed an opinion that there are many other suitable businesses that could be located on the property that would not constitute a conditional use. None of these are proper consideration under Section 1169.03, *supra*. Likewise, the board made no definitive finding as to any specific deficiency but, instead, merely affirmed the denial of the conditional use permit by the commission. As indicated above, the administrative bodies failed to make the conclusions of fact supporting its decision which are required by R.C. 2506.03.

Equally important is the provision of Gahanna City Code 1169.03(b), which provides as follows:

"The Commission may approve, with modification, an application for a conditional use if the proposed use is a conditional use of the zoning district and the applicable development standards are met, but plot plan modification is required:

"(1) To be in accord with the appropriate plans for the area; and

"(2) To prevent undesirable effects on adjacent property and the surrounding area. Such modification may be a limitation on the extent or intensity of development, a requirement for additional screening by fence or landscaping, a change in the method of plan for lighting, time limits as to the length of time the use may be permitted to exist, control of access or other conditions of development as may be required. Recommendations regarding the modification of plans or other appropriate actions shall be stated with the reasons for each recommendation."

Reading the Gahanna Planning and Zoning Code as a whole, it becomes quite apparent that the appropriate action of the commission (and thus the board on appeal) is first to determine whether the application for a conditional use meets the requirement of Gahanna City Code 1169.03(a) for approval. If it does, approval should be forthcoming. If it does not, the commission is required to determine whether the first requirement is met, namely, whether the proposed use is a conditional use of the zoning district and the applicable development standards established in the zoning ordinance are met. It is conceded that the proposed use is a conditional use of the zoning district involved and there has

been no contention that the proposed use does not comply with the development standards for the use district as set forth in Gahanna City Code 1153.03(c). Accordingly, both the commission and the board were required first to consider whether there could be modifications which would prevent alleged undesirable effects on adjacent property and the surrounding area, if such be found to exist, prior to proceeding with disapproval.

In other words, there is a three-step requirement under the Gahanna City Code for action by either the commission or on appeal by the board with respect to conditional uses. First, approval must be considered on the basis of the application. If after such consideration, it is determined that the proposed conditional use presents problems with the appropriate plans for the area or that there are undesirable effects on adjacent property or the surrounding area, consideration must be given as to whether there are modifications which would sufficiently alleviate these undesirable effects so that the conditional use would be appropriate. Only if it is determined both that there are such undesirable effects and that such undesirable effects cannot be alleviated by modification should the commission or the board proceed to the third stage and disapprove the application.

Here, since there are no findings of fact, and the decisions are somewhat equivocal in any event, it is difficult to find any basis for the disapproval. At the very least, the board failed to make the appropriate findings and failed to consider modifications other than to reject those proposed by the staff out of hand with no consideration given as to whether these modifications alleviated any undesirable effects on adjacent property and the surrounding area.

The common pleas court found merely that "[t]he record reflects that there was substantial, reliable, and probative evidence before Appellee that Appellant's proposed use of the property would have undesirable effects on the surrounding area." As indicated above, it is difficult to find such substantial, reliable and probative evidence since none of the evidence was under oath, and most of it was generalized statements as to opinions of people on the desirability of the use, rather than on any specific undesirable effect on the surrounding area or adjacent property. The unsworn evidence was very sparse at best and did not indicate the distance some of the objectors lived from the property. The "surrounding area" is somewhat vague. However, what evidence there is does indicate that the proposed tire store is in the center of a commercial corridor.

It is undisputed that the tire store would be built on the parking lot of a large shopping center on an eleven-acre site on the northwest corner of U.S. Route 62 and Hamilton Road in Gahanna. There was, however, some indication that there is property zoned single-family residential across the street from the shopping center (specifically across the street from the grocery supermarket). The area

involved was described by one of the unsworn speakers as "one of the prime commercial spots in all of Franklin County," who also indicated that he would be in favor of a nice restaurant at the location. Another stated, "there's the Schottenstein development, which is a retail development proposed to go in across the street; other types of development like that. I don't think this goes with that." Another witness referred to "residential houses * * * almost directly across the street at 62 and Clotts."

■ Under the circumstances, the unsworn statements made by various persons representing housing or civic associations do not constitute substantial, reliable and probative evidence. On the other hand, Rocky Point made no effort to have appropriate evidence adduced before the common pleas court, which is the proper procedure under the circumstances such as are herein involved. The upshot of the matter is that not only is there no reliable, probative and substantial evidence supporting a denial of the permit, there is no substantial, reliable and probative evidence supporting a granting of the conditional use permit. Nor are there any factual findings by either the commission or the board as to a basis for denial or granting of the conditional use permit. Nor did either the commission or board follow the proper procedure under the Gahanna City Code for disapproving an application for a conditional use permit for the apparent grounds involved, which require first a determination whether there are modifications that will alleviate undesirable effects, and only if there are no modifications which can alleviate such undesirable effects should the application be disapproved.

To this extent, the assignment of error is well taken. However, the appropriate remedy that the common pleas court should have granted was to reverse the decision of the Gahanna Board of Zoning Appeals and remand the cause to that board for an appropriate hearing with witnesses being sworn, opportunity for cross-examination being afforded and the making of specific conclusions of facts supporting the decision as contemplated by R.C. 2506.03 and to make the determinations required by Gahanna City Code 1169.03.

Since the statements contained in the public hearing before the commission and the board as a matter of law are legally insufficient to constitute substantial, reliable and probative evidence supporting either an approval or disapproval of the application for the conditional use permit and since neither the commission nor the board followed the proper decisional process required by the Gahanna City Code, and neither made any factual findings indicating the factual basis for the denial, it is appropriate for the case to be remanded to the board for a new hearing and determination. See *Superior Metal Products, Inc. v. Ohio Bur. of Emp. Serv.* (1975), 41 Ohio St.2d 143, 70 O.O.2d 263, 324 N.E.2d 179; *Orley v. Kosydar* (1974), 40 Ohio St.2d 97, 69 O.O.2d 486, 321 N.E.2d 238; and *Gennaro*

*Pavers v. Kosydar* (1974), 38 Ohio St.2d 174, 67 O.O.2d 184, 311 N.E.2d 516. Although these cases involved different types of administrative appeals, we see no reason not to apply them with respect to an R.C. Chapter 2506 appeal. However, upon remand, the common pleas court could exercise its discretion to hear the matter itself pursuant to R.C. 2506.03.

For the foregoing reasons, and to the extent indicated, the assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court with instructions either to remand the cause to the Gahanna Board of Zoning Appeals for an appropriate hearing as defined in this opinion, or to conduct an evidentiary hearing in accordance with R.C. 2506.03, and for such further proceedings as may be in accordance with law consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PETREE and TYACK, JJ., concur.